ALDORE MINNIE & others *vs.* CITY OF CHICOPEE & others.

Hampden.   September 27, 1961, April 3, 1962, June 20, 1962. — July 12, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Statute,* Acceptance.   *Municipal Corporations,* Vote of aldermen, Veto by mayor, Officers and agents, Municipal finance.   *Police.   Public Officer. Chicopee.*

Under St. 1897, c. 239, § 27, an order of the board of aldermen of Chicopee presented to the mayor and seasonably returned by him unsigned but not accompanied by any statement of his objections became effective.   [745]

Acceptance by a city of G. L. c. 41, § 108E, establishing minimum compensation of police officers "[n]otwithstanding the provisions of any general or special law to the contrary," was not subject to requirements of the city charter respecting fixing salaries of officers by the board of aldermen by ordinance, or to G. L. c. 44, § 33A.   [745–746]

Upon valid acceptance by a city of G. L. c. 41, § 108E, the city was obliged to provide for the salaries fixed by the statute commencing on the effective date of the acceptance.   [746]

A vote of the board of aldermen of a city accepting G. L. c. 41, § 108E, was not an ordinance.   [746]

It was not to be assumed that city officers would not take all necessary action to carry out their duty as indicated by a declaratory decree ordered by this court to be entered in a suit in equity to which they were parties, so that it was unnecessary to enter orders against them. [747]

BILL IN EQUITY filed in the Superior Court on March 7, 1960.

Reports in the suit were made by *R. Sullivan, J., Toma-sello, J.*, and *Good, J.*

*Norman L. Stepno* for the plaintiffs.

*Francis G. Gregory,* City Solicitor (*Alfred A. Wojcik,* Assistant City Solicitor, with him), for the defendants.

· CUTTER, J.   Members of the police department of Chicopee seek declaratory relief to determine whether they are entitled to additional compensation because of action by the board of aldermen (the board) in November and December, 1959, with respect to the acceptance by Chicopee of G. L. c. 41, § 108E (inserted by St. 1959, c. 228).[1]   The case is now before us[2] upon the pleadings, a statement of agreed facts, and two sets of supplemental findings.   The case has been reported without decision.   We examine the contentions of the parties which remain open upon the present record.[3]

---

[1] Section 108E reads: "*Notwithstanding the provisions of any general or special law to the contrary,* the minimum annual compensation of each regular police officer of the police department of any city . . . shall be not less than the following: For the first year of service four thousand eight hundred and eighty dollars. For the second year of service five thousand and thirty dollars. For the third and each succeeding year of service five thousand five hundred dollars. This section shall become effective when accepted . . . , in the case of . . . cities [not having a Plan E charter] by vote of the city council, subject to the provisions of the charter . . ." (emphasis supplied).

[2] Before our decisions in *Oleksak* v. *Westfield,* 342 Mass. 50, and *Fisher* v. *Holyoke,* 342 Mass. 669, 671, 674, the case was first reported without decision upon the pleadings and a statement of agreed facts. After the case had been decided by this court, it developed that the statement of agreed facts in vital respects incorrectly set forth the 1959 proceedings of the board. Upon motion of the plaintiffs, accompanied by an affidavit of the city clerk, the rescript and opinion were withdrawn and cancelled by order dated November 30, 1961, because, as this court stated in its order, it "would be plainly unjust to have this case decided upon an erroneous and incomplete record." See *Linse* v. *O'Meara,* 338 Mass. 338, 340. The case was remanded to the Superior Court "for further hearing [and] completion and correction of the record." In the Superior Court, the statement of agreed facts was discharged (see *Loring* v. *Mercier,* 318 Mass. 599, 600–601) "in so far as it relates to the matters contained in" the affidavit accompanying the plaintiff's motion. The trial judge then made findings concerning what proceedings of the board in fact took place in November and December, 1959. After resubmission of the case on April 3, 1962, it was again remanded on April 20, 1962, for a further report of facts, which was submitted to this court on June 20, 1962.

[3] The most substantial question raised by the original record was whether the board in 1959 had accepted G. L. c. 41, § 108E (see fn. 1, *supra,*) "by vote . . . subject to the provisions of the [city] charter." On the earlier record it did not appear that the board had done so by a vote which, "on its final passage," had been "taken by roll call" as required by § 25 of the

1. On April 20, 1962, this case was remanded for a further report of facts because the record did not adequately disclose what action upon the board's order purporting to accept § 108E had been taken following the presentation (on December 9, 1959) of the order to the mayor for approval. The order was returned unsigned to the city clerk on December 21, 1959, without any statement of the mayor's objections. Accordingly, no entry of objections was made on the board's records, and no further action respecting the order was taken by the board. December 21, 1959, was a Monday. City offices were closed on Saturday, December 19. See G. L. c. 41, § 110A, inserted by St. 1947, c. 265; Chicopee Rev. Ord. (1956) c. 18, § 1. See also G. L. (Ter. Ed.) c. 4, § 9. On January 7, 1960, the city clerk notified the Secretary of the Commonwealth by letter of the acceptance of § 108E, which the trial judge found was December 21, 1959.

Under § 27 of the city charter, the order became effective because, although it was returned unsigned by the mayor within ten days as extended by a Saturday and a Sunday when city offices were closed, it was not accompanied by any statement of his objections. See *Mayor of Lowell* v. *Dadman,* 191 Mass. 370. See also comparable provisions of G. L. c. 39, § 4; c. 43, §§ 55, 63; McQuillin, Municipal Corporations (3d ed.) §§ 16.43–16.44; Rhyne, Municipal Law, § 9–5; Hardy, Municipal Law, § 29. Cf. *Storer* v. *Downey,* 215 Mass. 273, 275. Cf. also *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191, 202.

2. The city asserts that § 108E has not been accepted effectively because the board's proceedings in 1959 did not comply with § 60 of the city charter (St. 1897, c. 239, § 60, as amended by St. 1925, c. 43), which reads, "All salaries of city officers . . . shall . . . be established by ordinance by the board of aldermen, but no ordinance changing any such salary shall take effect until an appropriation therefor has

Chicopee charter (St. 1897, c. 239, § 25). See *Fisher* v. *Holyoke,* 342 Mass. 669, 671, 674. The corrected record establishes that "the ordinance [*sic*] accepting . . . [§ 108E] was given a . . . final reading by a roll call vote of five yes and 4 no, Aldermen Szetela, Biela, Bobala and LaCroix voting no."

been made." Section 60 has no relevance. Although § 60 provides that salaries are to be set by ordinance, § 108E is itself a statute setting compensation, "[n]otwithstanding the provisions of any general or special law to the contrary." See *Oleksak* v. *Westfield,* 342 Mass. 50, 51, where the words just quoted were interpreted as referring to "the compensation provisions" of § 108E. The statute was a method, alternative to that fixed in § 60 of the amended charter, for setting rates of compensation. Section 60 is not a provision of the charter which affects the method of accepting a statute. Accordingly, the acceptance of § 108E is not subject to § 60.

3. Once § 108E was accepted, an appropriation inevitably was bound to follow. *Fisher* v. *Holyoke,* 342 Mass. 669, 673, and cases cited. See G. L. c. 44, § 33A (as amended through St. 1955, c. 358[4]). See also *Oleksak* v. *Westfield,* 342 Mass. 50, 53. The mandate of § 108E became operative as soon as the section was accepted by Chicopee. Commencing on the effective date of the acceptance, the city was obliged to provide for the salaries fixed by the statute. We recognize that c. 44, § 33A, contains restrictions upon setting by ordinance salaries which are not "to be operative for more than three months during the financial year." These restrictions do not bear upon this case. See the *Oleksak* case, at pp. 52–53. That case also establishes that the board's order accepting § 108E was not an ordinance. Charter requirements and board rules relating to ordinances have no relevance. Cf. *Councillors of Brockton* v. *Gildea,* 343 Mass. 631, 633.

4. An order transferring $527.03 from the police salaries account to cover increases in salaries in the police department was adopted by the board on December 29, 1959. If this order was necessary to appropriate funds sufficient to meet the increases in salary made by the acceptance of § 108E, and if the transfer of funds could not be accomplished without such an order, the order did not satisfy G. L. c. 44, § 33B (as amended through St. 1951, c. 798, § 6),

---

[4] See later amendment by St. 1960, c. 301.

for it does not appear that the mayor recommended such a transfer. In any event, the city is not relieved from its obligation, imposed by § 108E, to make appropriations sufficient to pay, and to pay, the statutory salaries from the date of the acceptance of § 108E. See *Barnard* v. *Lynn,* 295 Mass. 144, 147. See also *Rock* v. *Pittsfield,* 316 Mass. 348, 351. The record is not sufficiently complete to enable us to determine what appropriations have in fact been made since December 21, 1959.

5. Although the plaintiffs ask for a decree directing the city officials to make the salary payments, we shall not assume that public officials and boards, once informed of their duty in the premises, will not take all necessary action to carry out that duty. See *Oleksak* v. *Westfield,* 342 Mass. 50, 53.

6. A decree is to be entered declaring that § 108E was validly accepted and that the police officers of the city became entitled to compensation based upon § 108E, beginning on December 21, 1959.[5]

*So ordered.*

---

[5] On November 1, 1962, the following order was made: From the plaintiffs' request for clarification of the rescript (dated July 12, 1962) it appears that the question has been raised whether certain relief may now be granted in the Superior Court after the rescript. Accordingly, the following provisions are added to the rescript: "The case is remanded to the Superior Court for the entry of such decree and for further proceedings consistent with the opinion which, in the discretion of the Superior Court, may include, among other matters, (a) the allowance of amendments of the bill of complaint to seek other and further relief and determinations which may help to terminate all controversies among the parties; (b) further hearings; (c) the computation of any amounts of interest payable to the several plaintiffs (see *Mayor of Cambridge* v. *Cambridge,* 228 Mass. 249, 253; *Crowley* v. *Boston,* 342 Mass. 344, 350–351); (d) the framing of a final decree granting appropriate relief to and including the date of such final decree; and (e) providing in such final decree for retaining jurisdiction in the Superior Court to supervise the execution of such decree. No party is to receive costs or expenses." REPORTER.